# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Donna Witt, <br><br>                Plaintiff, <br><br> v. <br><br> TFS Surgical (US), Inc.; TFS Manufacturing Pty. Ltd.; and John Doe Corporations 1-20, <br><br>                Defendants. | Civ. No. 16-1042 (JRT/BRT) <br><br><br><br> **REPORT AND RECOMMENDATION** |

Charles J. Lloyd, Esq., Livgard & Lloyd, PLLP, Joseph J. Triscaro, Esq., Triscaro & Associates, Ltd., counsel for Plaintiffs.

Kelly P. Magnus, Esq., and Tammy M. Reno, Esq., Stich, Angell, Kreidler, Unke & Scattergood P.A., counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendants TFS Surgical (US), Inc. ("TFS Surgical"), and TFS Manufacturing Pty. Ltd.'s ("TFS Manufacturing"), Motion to Dismiss. (Doc. No. 12.) The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. (Doc. No. 26.) On June 26, 2016, this Court held a hearing on the motion. (Doc. No. 30.) For the reasons stated below, this Court recommends that Defendants' motion be denied without prejudice.

## BACKGROUND

This dispute arises out of the alleged injuries Plaintiff suffered after being implanted in February 2013 with a "Pelvic Mesh Product" during surgery at the University of Minnesota Medical Center. (Doc. No. 1, Compl. ¶ 18.) The Product was implanted to treat Plaintiff's pelvic organ prolapse and/or stress urinary incontinence. (*Id.* ¶ 19.) On or about October 2, 2013, Plaintiff was advised that the Product had eroded into her rectum. (*Id.* ¶ 21.) On February 5, 2014, Plaintiff underwent surgery to excise the mesh. (*Id.* ¶ 22.) Plaintiff alleges she has continued to suffer multiple complications and has experienced mental and physical pain and suffering as a result of having the Product implanted in her. (*Id.* ¶¶ 23–24.)

The Pelvic Mesh Product was manufactured by TFS Manufacturing and distributed by TFS Surgical. (Compl. ¶¶ 2, 3, 9, 12.) TFS Manufacturing is an Australian company. (*Id.* ¶ 3.) TFS Surgical was[1] a Delaware corporation with its principal place of business in Texas. (*Id.* ¶ 2.)

Plaintiff filed suit against both TFS Manufacturing and TFS Surgical on April 21, 2016. (Doc. No. 1, Compl.) Defendants now move for dismissal based on lack of service, and, with regard to TFS Manufacturing, lack of personal jurisdiction.

---

[1] TFS Surgical is now a dissolved company. TFS Surgical officially dissolved with the Delaware Secretary of State on April 15, 2016. (Doc. No. 15, Aff. of Kelly P. Magnus ("Magnus Aff.") ¶ 3, Ex. D.) The Texas Office of the Secretary of State filed its Termination of Foreign Entity on April 20, 2016. (*Id.* at Ex. E.)

# DISCUSSION

## I. Service of Process

Rule 12 of the Federal Rules of Civil Procedure permits a party to move to dismiss claims for insufficiency of process or service of process. *See* Fed. R. Civ. P. 12(b)(4), (b)(5). Rule 12 also provides that a party may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When there is an insufficiency in process or service of process, a court lacks personal jurisdiction over the defendant. *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). "While a plaintiff eventually bears the burden of establishing personal jurisdiction and sufficient service of process by preponderance of the evidence, only a prima facie showing is required at this stage." *Sec. Life Ins. Co. of Am. v. Sw. Reinsure, Inc.*, No. CIV. 11-1358 MJD/JJK, 2011 WL 6382857, at *5 (D. Minn. Dec. 20, 2011) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir.1995)). "[T]he court must look at the facts in the light most favorable to the nonmoving party . . . and resolve all factual conflicts in favor of that party." *Dakota Indus. v. Dakota Sportswear,* 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted).

### A. Service on TFS Surgical

Rule 4 of the Federal Rules of Civil Procedure governs service of process in federal actions. Fed. R. Civ. P. 4. Domestic corporations must be served, absent a waiver, either "in the manner prescribed by Rule 4(e)(1) for serving an individual; or . . . by

delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) provides that service may be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Minnesota courts apply the law of the state of incorporation to a dissolved corporation, *Gassert v. Commercial Mechanisms, Inc.*, 277 N.W.2d 392, 393 (Minn. 1979), including, on questions of the effectiveness of service of process. *See Benchmark Computer Sys., Inc. v. Int'l Computer Distrib., Inc.*, 417 N.W.2d 714, 716 (Minn. Ct. App. 1988) (considering provisions of Delaware law to resolve the issue of effective service on a dissolved foreign corporation). Therefore, this Court will determine the sufficiency of process and service of process on TFS Surgical according to the rules established by the company's state of incorporation, Delaware.

Defendants argue that TFS Surgical, a dissolved corporation, was not properly served under Delaware law, because they assert Plaintiff was required to serve TFS Surgical through the Secretary of State. It is undisputed that service could have been made in this instance through the Secretary of State. It is also undisputed, however, that in Delaware, a dissolved corporation shall continue for a term of three years from the date of dissolution. Del. Code. § 278 (stating that "all corporations . . . shall nevertheless be continued for the term of 3 years from such expirations or dissolution . . . for the purpose

of prosecuting and defending suits, whether civil, criminal or administrative . . .");
*Benchmark*, 417 N.W.2d at 716 ("Under Delaware law, a corporation's existence continues unmodified for three years while its officers and directors wind up its affairs unless application is made for the appointment of a trustee or receiver."). Here, Plaintiff chose to serve who she knew as TFS Surgical's registered agent (the Company Corporation) within that three year grace period. Specifically, on May 27, 2016, Plaintiff attempted to serve TFS Surgical by serving an individual named Lynanne Gares. Lynanne Gares is employed by the Company Corporation (*i.e.*, referenced as the Corporation Service Company in the Magnus Affidavit), the company TFS Surgical had listed as its registered agent. (*See* Magnus Aff. ¶ 3, Ex. F.)

Defendant argues that the Company Corporation discontinued its registered agent services when TFS Surgical was dissolved in April 2016 (Doc. No. 14, Defs.'s Mem. of Law in Supp. of their Mot. to Dismiss ("Defs.'s Mem.") 3). There is no evidence, however, that the Company Corporation had indeed withdrawn as TFS Surgical's registered agent. Nor is there evidence that an application was made for the appointment of a trustee or receiver. Instead, as of April 14, 2017, which is after the service was made, the Delaware Secretary of State's website listed the Company Corporation as TFS Surgical's registered agent. (Doc. No. 19, Decl. of Charles J. Lloyd ("Lloyd Decl.") ¶ 10, Ex. 9.) This Court agrees with Plaintiff that in Delaware, if the corporation has been dissolved for less than three years, and the registered agent has not officially withdrawn

or an application has not been made for the appointment of a trustee or receiver, then service can still be made on the registered agent. *See Benchmark*, 417 N.W.2d at 716 ("[T]he authority of Delaware corporate officers continues after dissolution unless a trustee or receiver is appointed, and service on such officers is therefore sufficient to establish jurisdiction over the corporation."); *see also Addy and Errett v. Short*, 89 A.2d 136, 139 (Del. 1952) ("During the three-year period of winding up, the corporation functions exactly as it had functioned before dissolution . . ."). Here, by serving the registered agent, Plaintiff has met her burden of showing a prima facie case of sufficient service of process, and Defendants' motion to dismiss Plaintiff's claims against TFS Surgical for lack of service should be denied.

### B. Service on TFS Manufacturing

Defendants also contend that Plaintiff's service of process on TFS Manufacturing was ineffective. TFS Manufacturing is a foreign corporation, organized under the laws of Australia. It has no office or registered agent in Minnesota. Accordingly, Federal Rule of Civil Procedure 4(f) applies.

Rule 4(f) provides that foreign corporations be served "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f); *see also Froland v. Yamaha Motor Co.*, 296 F. Supp. 2d 1004, 1007 (D. Minn. 2003) (stating that the Hague Convention applies "in all cases, in civil or

commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad") (quotation omitted). "Australia acceded to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (Hague Service Convention)." *Hadjdjelloul v. Glob. Mach. Co.*, No. CIV. 10-4782 (DSD/SER), 2011 WL 4860025, at *3 n.6 (D. Minn. Oct. 7, 2011); *see also* Australian Government Attorney-General's Department, *Serving a legal document across international borders*, https://www.ag.gov.au/Internationalrelations/PrivateInternationalLaw/Pages/ServingaLegalDocumentAcrossInternationalBorders.aspx (last visited July 11, 2017) (stating that Australia is a member of the Hague Convention). "Australia does not object to the use of private process servers, diplomatic channels or local agents." Australian Government Attorney-General's Department, *Serving a legal document across international borders*, https://www.ag.gov.au/Internationalrelations/PrivateInternationalLaw/Pages/ServingaLegalDocumentAcrossInternationalBorders.aspx (last visited July 11, 2017).

Further, the requirements for service on a company in Australia are set forth in Section 109X of the Corporations Act 2001 (Commonwealth of Australia). *See* https://www.legislation.gov.au/Details/C2017C00210 (last visited July 11, 2017). The Corporations Act 2001 provides for the following methods of service, among others:

> (1) For the purposes of any law, a document may be served on a company by:
>     (a) leaving it at, or posting it to, the company's registered office; or
>
>     (b) delivering a copy of the document personally to a director of the company who resides in Australia or in an external Territory; . . .

7

(Doc. No. 15, Magnus Aff. ¶ 3, Ex. H.) Here, it is undisputed that on September 16, 2016, Plaintiff attempted to serve TFS Manufacturing through the use of a process server at 3 Charles Street, Allenby Gardens, South Australia 5009, which is the address of TFS Manufacturing's principal place of business. There, the process server met with an employee who refused to acknowledge he is authorized to accept service on behalf of TFS Manufacturing or to state his name or title. (Doc. No. 7, Aff. of Service ¶ 5.) The process server placed the documents at his feet and informed him he was being served with legal process of behalf of TFS Manufacturing. (*Id*.) The process server stated in his original affidavit of service that the male employee was in his 50s, 6'4" tall, and had a thin build with bleach blondish hair. (*Id.* ¶ 6.) The process server later identified the person that was served as Mr. Paul Zadow, the owner of TFS Manufacturing. (Doc. No. 20, Suppl. Aff. of Service of Ricky Wilson ¶¶ 4–5; Magnus Aff. ¶ 3, Ex. B.)

Defendants assert that the service was invalid because it was not done at TFS Manufacturing's registered office, which is located at DK Accounting and Tax Solutions, 45 Wootoona Terrace, St. Georges, South Australia, 5064, but instead was done at TFS Manufacturing's principle place of business. *See* section 109X(1)(a). This, however, was just one way in which service could have been properly done under Australian law. Another way to properly serve a company in Australia is by "delivering a copy of the document personally to a director of the company who resides in Australia or in an external Territory." *See* section 109X(1)(b). Defendants do not contest that the person

8

who was served by the process server was in fact Mr. Zadow. Instead, citing only to an excerpt from an Australian case (without attaching the decision in full) they contend that the process server "must have intended to serve the director at the time of service in order to be effective." (Doc. No. 21, Defs.' Reply Mem. 5.) The Court disagrees with Defendants' reading of the *Jin Xin* case quoted partially in their reply brief; the case does not stand for the proposition that a process server in Australia must intend to serve a particular person at the time of service to meet the requirements in Section 109X. Section 109X is clear that "delivering a copy of the document personally to a director of the company who resides in Australia or in an external Territory" would effectuate service. Mr. Zadow was personally served and is indisputably a director of TFS Manufacturing. (*See* Magnus Aff. ¶ 3, Ex. B, Aff. of Paul A. Zadow ("I am the owner of TFS Manufacturing Pty. Ltd."); Ex. C (listing Paul A. Zadow as the "President/Director").)

Defendants also argue (without citing any support) that the process server's affidavit does not clearly identify that the documents that were allegedly served on TFS Manufacturing are the same as the documents filed in the proceeding. The process server's affidavit of service states:

> On or about Friday, September 16, 2016, I was instructed by Plaintiff's attorneys of the US law firm Livgard and Lloyd PLLP to serve upon Defendant TFS Manufacturing Pty Ltd. (hereinafter "TFS") the following documents:
>
> - Hague Service Convention "Notice"
> - Hague Service Convention "Summary of the Document to be Served"

- Summons in a Civil Action
- Complaint for Monetary Damages

(Doc. No. 7, Aff. of Service ¶ 2.) The process server explained that he "placed the above-referenced documents at his feet and informed him he was being served with legal process on behalf of TFS Manufacturing Pty Ltd." (*Id.* ¶ 5.) This Court concludes the affidavit is sufficient to provide notice as to what was served on TFS Manufacturing. Defendants' generic, unsupported argument that the affidavit was in some way deficient does not rebut Plaintiff's prima facie case showing that the service of process was sufficient. Therefore, Defendants' motion to dismiss claims against TFS Manufacturing for lack of service should be denied.[2]

## II.     Personal Jurisdiction over TFS Manufacturing

Defendants also argue this case should be dismissed against TFS Manufacturing for lack of personal jurisdiction, based on their assertion that TFS Manufacturing has no contacts, let alone minimum contacts, with the state of Minnesota.

When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists. *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011). To "survive a motion to dismiss challenging personal

---

[2]     Defendants also argue that because neither party was properly served, Plaintiff's claims are barred by the statute of limitations. Because the Court concludes that service was proper as to both Defendants, and Defendants' statute-of-limitations argument was based solely on lack of service, the Court need not address the merits of Defendants' statute-of-limitations argument.

jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014); *see also Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) ("To survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state."). In the absence of an evidentiary hearing, a court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor[.]" *Fastpath*, 760 F.3d at 820.

A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004) (quotations omitted). Minnesota's long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause"; therefore, the Court need only consider due process requirements. *See Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007). To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." *Romak*, 384 F.3d at 984. "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there[.]" *Coen*, 509 F.3d at 905 (quotations omitted).

Personal jurisdiction based on contacts with the forum state can be either general

or specific. "General jurisdiction" is established when an entity has "continuous and systematic" contacts with the forum state sufficient to render the foreign entity "at home" in the forum state. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction" is established when the contacts with the forum state specifically relate to the underlying controversy. *Id*. Under either analysis, the Eighth Circuit considers five factors in determining whether personal jurisdiction exists: "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties." *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995).

Defendants assert that TFS Manufacturing is an Australian corporation that is responsible for creating, assembling, and labeling TFS products. (Magnus Aff. ¶ 3, Ex. B.) They concede that TFS Manufacturing has shipped products to TFS Surgical in Texas. (*Id.*) However, they contend that TFS Manufacturing does not have any offices in Minnesota, does not have any property in Minnesota, does not have any agents in Minnesota, has never shipped products to Minnesota, and has never marketed products to Minnesota. (*Id.*) Therefore, they argue that TFS Manufacturing does not have any minimum contacts with Minnesota, and thus due process precludes finding personal jurisdiction exists over TFS Manufacturing. In response, Plaintiff points out that both

TFS Manufacturing and TFS Surgical are owned by the same person – Mr. Zadow, and that TFS Surgical was registered to do business with the Minnesota Secretary of State. Plaintiff also points to the fact that TFS Manufacturing shipped products to TFS Surgical in Texas – a fact which TFS Manufacturing does not contest. (*See id.*) Plaintiff argues that the court may exercise personal jurisdiction over TFS Manufacturing under the "stream of commerce" theory.

Under the stream of commerce theory, specific jurisdiction attaches to a foreign manufacturer that "'pour[s] its products' into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area." *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998) (quoting *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir. 1994)). "The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Machinery v. Nicastro*, 564 U.S. 873, 882 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Here, this Court is only aware that one of Defendants' Pelvic Mesh Products entered Minnesota – the product that was implanted into Plaintiff. Although TFS Manufacturing uses a distributor to sell its products in the United States, the only distributor named in Plaintiff's Complaint is TFS Surgical, a Delaware corporation that

maintains its principal place of business in Texas, which is not near Minnesota. While it is undisputed that Plaintiff was implanted with Defendants' Pelvic Mesh Product during surgery performed at the University of Minnesota Medical Center on February 14, 2013 (*see* Compl. ¶ 18; Doc. No. 14, Defs.' Mem. 2), there are no allegations explaining how Defendants' Pelvic Mesh Product moved from Texas to Minnesota. Nor are there allegations that TFS Manufacturing directed TFS Surgical to market its products to the Minnesota market, or that it controlled the distribution system. Instead, Plaintiff generally alleges only the following:

> The Defendants have marketed and sold the Defendants' Pelvic Mesh Products to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies, offering exaggerated and misleading expectations as to the safety and utility of the Defendants' Pelvic Mesh Product.

(Compl. ¶ 26.)

At this stage, the Court is without evidence to fully assess the first three factors – the quantity of contacts with Minnesota, the nature and quality of those contacts, and the connection of the cause of action with those contacts.[3] Without more, it appears that TFS Manufacturing has done nothing more than place its product in the stream of commerce through a Texas-based distributor, which is insufficient to establish personal jurisdiction.

---

[3] This Court notes that the fourth factor—the interest of the forum state—weighs slightly in Plaintiff's favor, and the fifth factor— the convenience of the parties—is neutral since both sides would have witnesses that would be required to travel, whether the forum was Minnesota or some other state or foreign country.

*See J. McIntyre*, 564 U.S. at 888–89 (noting in a concurring opinion that "the Court, in separate opinions, has strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place") (Breyer, J., concurring in the judgment) (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 111, 112 (1987)); *see also Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 749 n.5 (8th Cir. 2011) (finding insufficient contacts with the forum to confer personal jurisdiction and noting the conclusion in the *J. McIntyre* concurrence as relevant guidance); *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 376 (8th Cir. 1990) ("Like the nonresident defendant in *Asahi*, appellees' placement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum State."). Therefore, based on the record before the Court, Plaintiff has not made a prima facie showing of personal jurisdiction over TFS Manufacturing.

Inexplicably, counsel for Plaintiff did not initiate any discovery to meet her burden; counsel did not seek permission from the Court to initiate early jurisdictional discovery, nor did counsel serve discovery after the parties conferred as required by Rule 26(f). *See* Fed. R. Civ. P. 26(d)(1). Instead, in defending the present motion to dismiss, Plaintiff now asserts that because TFS Surgical was registered to do business in Minnesota, "it is likely that discovery will produce numerous doctors and hospitals who

15

purchased and/or received TFS devices and implanted them into patients in Minnesota." (Doc. No. 18, Pl.'s Mem. in Opp'n 10–11.) Plaintiff also asserts that "discovery will reveal that TFS Manufacturing utilized product representatives to provide information and assistance to the doctors during surgical procedures that were performed in the State of Minnesota." (*Id.* at 12.) Again, why Plaintiff's counsel did not seek this discovery before now and come armed with it in response to Defendant's motion is perplexing. The time for Plaintiff's counsel to make its prima facie showing on jurisdiction was now, not some time in the future. This Court, however, will not penalize Ms. Witt for her counsel's decision to not pursue the discovery necessary to fully respond to Defendants' motion, and recommends permitting Plaintiff some very limited jurisdictional discovery to gain information that is in Defendants' control and relevant to her prima facie case that TFS Manufacturing purposefully availed itself of the privilege of conducting activities within Minnesota.

Accordingly, this Court recommends that very limited jurisdictional discovery be allowed in the form of five interrogatories, to be served immediately on Defendants if the District Court adopts this Report and Recommendation. This Court also recommends that Defendants' Motion to Dismiss be denied without prejudice to refiling after jurisdictional discovery has concluded if necessary.

# RECOMMENDATION

For the reasons stated above, this Court recommends that:

1. Defendants' Motion to Dismiss (Doc. No. 12) be **DENIED WITHOUT PREJUDICE**; and

2. If the District Court adopts this Report and Recommendation, Plaintiff may, within three days of receiving the District Court's order, serve up to five interrogatories on Defendants focused on the subject of personal jurisdiction over TFS Manufacturing.

Date: July 12, 2017

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

# NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report by **July 26, 2017**. A party may respond to those objections within **fourteen days** after service thereof. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.